[Civ. No. 6794.  Second Appellate District, Division Two.—June 9, 1931.]

SAMUEL M. SHORTRIDGE, Jr., Receiver, etc., Respondent, v. HIPOLITO COMPANY (a Corporation), Appellant.

Harrah, Louis & Quillian and H. B. Pool for Appellant.

J. L. Kearney and A. H. Blum for Respondent.

CRAIG, Acting P. J.—A judgment was rendered in the Superior Court of Los Angeles County against the defendant for an alleged unpaid portion of insurance premiums on policies issued under the Workmen's Compensation, Insurance and Safety Act.  The defendant appealed therefrom and thereafter a receiver of the plaintiff corporation was appointed, who continues the proceedings here.

Commencing in October, 1924, the Lumbermen's Reciprocal Association, a compensation insurance corporation, issued three successive annual policies purporting to cover liability of the appellant to injured employees. The subjects of insurance were therein classified under at least four headings, to wit, manufacturing, drivers and helpers, chauffeurs and clerical office employees. An audit of the employer's records in 1927 revealed that it had made no declaration, and that the policies had consequently borne no provision for employees engaged in fitting and installing window screens, which was a part of the employer's regular business, properly classified as "installation work", for which the defendant should have paid an additional amount of insurance premium. The action was instituted for the difference between the amount of premiums paid for insurance of workmen performing carpentry work but classified as salesmen and the legal rate allowed for such workmen under a proper classification.

The contentions below, and upon appeal arose principally from the question as to whether the insurance company or the defendant employer was responsible for the erroneous classification. Appellant insists that the respondent advised that the employees performing the outside work in controversy be classified as salesmen, and that since such designation was illegal the contract of insurance was void and unenforceable. It appears, however, that the respondent corporation was ignorant of the duties of these men, that there was no such labor known to it when the policies were issued, and that appellant's predecessor sought to base such contentions wholly upon hearsay evidence of statements alleged to have been made by an insurance agent for which the respondent was not legally answerable. Reports made by the insured did not bear information descriptive of the duties of the employees in question, and the insurer became aware of the discrepancy only upon investigation in 1927.

That the insurer is not bound by the statements of an agent which are alleged to vary the terms of its policies, is well settled. (*Fidelity Casualty Co.* v. *Fresno Flume & Irr. Co.*, 161 Cal. 466 [37 L. R. A. (N. S.) 322, 119 Pac. 646].) "Where the policy of insurance, as in this case, contains an express limitation upon the power of the agent, such agent has no legal right to contract as agent of the com-

pany with the insured, so as to change the conditions of the policy, or to dispense with the performance of any essential requisite contained therein, either by parol or in writing; and the holder of the policy is estopped, by accepting the policy from setting up or relying upon powers in the agent in opposition to limitations and restrictions in the policies." (*Fidelity & Casualty Co.* v. *Fresno Flume & Irr. Co., supra.*)

■ The contention that section 602b of the Political Code, which prohibits an insurance carrier from issuing a policy at rates less than those approved by the insurance commissioner is unconstitutional is without merit. In *German Alliance Ins. Co.* v. *Lewis*, 233 U. S. 389 [L. R. A. 1915C, 1189, 58 L. Ed. 1011, 34 Sup. Ct. Rep. 612], the Supreme Court of the United States, reviewing numerous cases, held that the state of Kansas had power to authorize its superintendent to direct an insurance company to establish a higher rate or a lower rate, whenever he might determine that any rate was excessive or inadequate to the safety or soundness of the company. It was there said: "The underlying principle is that business of certain kinds holds such a peculiar relation to the public interest that there is superinduced upon it the right of public regulation." Citing many instances of legislative control for public welfare, the court continued: "Those regulations exhibit it to be the conception of the law making bodies of the country without exception that the business of insurance so far affects the public welfare as to invoke and require governmental regulation. A conception so general cannot be without cause. . . . Contracts of insurance, therefore, have greater public consequence than contracts between individuals to do or not to do a particular thing whose effect stops with the individuals. .... The scope of judicial inquiry in deciding the question of power is not to be confused with the scope of legislative considerations in dealing with the matter of policy." It follows that the statute is not in that respect unconstitutional.

From what has been observed it becomes unnecessary to consider remaining questions raised by the parties.

The judgment is affirmed.

Thompson (Ira F.), J., and Archbald, J., *pro tem.*, concurred.